**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

IN RE

JEREMY MICHAEL JUDE                                              CASE NO. 15-10330
                                                                 CHAPTER 13
DEBTOR

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on confirmation of the Debtor's proposed chapter 13 plan [ECF No. 2] and the Objection to Confirmation of Debtor's Plan filed by Vanderbilt Mortgage and Finance, Inc. [ECF No. 14]. The Debtor filed its Response and Objection to Vanderbilt Mortgage and Finance's Objection to Confirmation of Debtor's Plan [ECF No. 17] and the matter was set for a valuation hearing on June 21, 2016. [ECF Nos. 35 and 44.]

The chapter 13 plan proposes to value Vanderbilt's claim secured by the Debtor's 2012 Giles mobile home (VIN# SGI011736TN) [POC 1-1] at $18,468.77 pursuant to 11 U.S.C. § 506(a) and repay the secured-claim value at a 4.25% interest rate. The parties stated on the record at the valuation hearing that they agree to a 5.25% interest rate. Therefore, the only issue left for decision is the value of the mobile home.

Prior to the hearing, the parties submitted their direct testimony by affidavit. The Debtor's direct testimony came from: Dale L. Hensley [ECF No. 41]; Lynn Prichard [ECF No. 53]; and the Debtor [ECF No. 43]. Vanderbilt provided the direct testimony of Walter Banks. [ECF No. 52.]

**I.    The Debtor's Objection to the Testimony of Vanderbilt's Appraiser is Overruled.**

The Debtor's counsel objected to the affidavit testimony and appraisal report from Walter Banks, arguing it was based on hearsay. The Debtor believes the following statement in the comments section of the appraisal report makes his testimony and appraisal inadmissible:

"Booked as Premier per Amy @ the manufacturer who stated the Big Show is a sub model of Premier and valued the same." [ECF No. 52-2 at 15.] The Court reserved ruling on the objection, pending cross examination and re-direct.

Banks described his methods for appraising the mobile home during his cross-examination. Banks used the N.A.D.A. database, which consolidates information on comparable sales of mobile homes in various regions of the country. Banks acknowledged that accurate identification of the manufacturer and model of a mobile home is essential to any appraisal and is required to provide a reliable N.A.D.A. appraisal report. Banks said he determined the mobile home's model number based on the manufacturer's Data Compliance Sticker, which he located in a cupboard at the home. [ECF No. 52-3 at 2-3.][1]

Banks testified that when he entered this model number into the N.A.D.A. valuation software that he used to complete his appraisal he discovered that the model number equates to a Premier or a Big Show. Banks also said he often contacts the manufacturer to verify the model if there is a question. In this case, the N.A.D.A. software identified the model number as either a Big Show or a Premier without distinguishing between the two, so he wanted to verify there was no difference between those models that might require an adjustment to his appraisal report. Banks testified that he contacted the manufacturer and spoke to a representative who confirmed that the software's classification of the home as a Premier model was accurate according to the company's records.

Based on his testimony, Banks reached his own conclusion regarding the model of the Debtor's mobile home that he confirmed by contacting the manufacturer. Regardless, an expert witness may rely on otherwise inadmissible facts or data in support of opinion testimony if other

---

[1] The model number is not legible on the exhibit. Vanderbilt offered to supplement the record if requested by the Debtor, but the Debtor did not object or request a better copy. Banks testimony was credible and his description of the model number is accepted as accurate.

2

"experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FED. R. EVID. 703. *See also Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) ("Rule 703 allows a testifying expert to rely on materials, including inadmissible hearsay, in forming the basis of his opinion."). Prichard, one of the Debtor's experts, indicated he called mobile home sellers in the area to find comparable sales. Further, Prichard's report indicates that he obtained information about the comparable sale he most closely relied on from Mobile Home Village, an internet marketplace. [ECF No. 53 at 5.] Therefore, it seems reasonable to accept the explanation from Banks that appraisers routinely rely on manufacturers or other third parties to confirm a model or other information.

The expert testimony from Banks is reliable and there is no reason to deny admission. The Debtor's object to his direct testimony is overruled.

## II. Vanderbilt's Evidence of the Mobile Home's Value is More Reliable than that Submitted by the Debtor.

### A. The Weight of Debtor's Evidence Is Diminished by his Experts' Lack of Knowledge of the Model Number of the Mobile Home.

The Debtor did not introduce any evidence to show the mobile home was not the model described by Banks. It is hard to understand why the Debtor thought it was helpful to his case to show that none of his witnesses knew the model number of the mobile home. It is difficult to believe that an appraiser or a buyer of a used mobile home would disregard or ignore key differences in the features between models.

The Debtor did not elicit any credible testimony from his witnesses that might explain why a model number is not important in determining the value of a mobile home. Therefore, the evidence provided by the Debtor's experts cannot receive the same weight as the testimony from Banks.

3

### B. The Debtor's Opinion of Value Will Receive No Weight.

The Debtor offered his own opinion that the value of the mobile home is $18,468.77. The Debtor asserts this is his personal opinion, but the value actually comes from an internet-based Value Report that he purchased from NADAguides.com. [ECF No. 43.] The Debtor agreed on cross-examination that he is not an expert and had no training or familiarity with the N.A.D.A. appraisal system. The Debtor testified he only used this online tool because he had heard it was a reliable way to determine mobile home values. Therefore, his testimony is given no weight in the evaluation of the value of the mobile home.

### C. The Valuation Evidence from the Debtor's Experts Is Less Reliable.

In *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879, 138 L. Ed. 2d 148 (1997), the Supreme Court held that the appropriate standard for valuing property that a debtor intends to retain in the context of a Chapter 13 "cramdown" plan under § 506(a) is the "replacement-value standard." *Id.* at 956. The *Rash* Court defined "replacement value" as "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* at 960.

The cost-approach method employed by Vanderbilt's appraiser is the more reliable valuation method under the facts and circumstances of this case and a better estimate of the mobile home's replacement value. Banks performed his appraisal using a cost approach based on mobile-home values compiled by N.A.D.A. Banks ultimately valued the Debtor's 2012 Giles mobile home at $40,100.00 after first determining a base value and then applying numerous adjustments to account for the home's age, condition, accessories, and installed components. [ECF Nos. 52 and 52-2.]

Prichard and Hensley used a sales-comparison approach to value the mobile home at $27,900.00 [ECF No. 53] and $25,000.00 [ECF No. 41], respectively. There is no reason a

sales-comparison approach could not provide a fair valuation if the testimony shows the value is reliable. But the characteristics of the comparable sales identified by Prichard and Hensley differ materially from those of the subject property, making their conclusions less reliable than the valuation from Banks.

Each of the three comparable sales in Hensley's report involved the sale of a mobile home and real estate together. Also, the allegedly comparable mobile homes were larger (1,560 sq. ft. to 2,126 sq. ft., *i.e.*, double wides) and older (7-8 yrs.) than the Debtor's home, a four year old single-wide model (1,280 sq. ft.). [ECF No. 41.]

Prichard also identified three comparable sales, but his second and third examples were older than the Debtor's mobile home with different or unknown manufacturers. [*See* ECF No. 53-2 at 2.] The first comparable was a May 2014 sale of a 2011 Giles mobile home, which could have had more relevance if Prichard had identified the model or shown that the 2011 home offered features similar to the Debtor's mobile home. Also, Prichard's claim that the trade name and features of a mobile home did not significantly affect the resale value is not credible. *See supra* Section II.A.

**D. The Assessment of the Condition of the Mobile Home from Banks is Credible.**

Banks determined the Debtor's mobile home was in "Good" condition using a point system as part of the N.A.D.A. appraisal form based on his personal inspection of the property. [ECF No. 52-2 at 8.] The Debtor attempted to cast doubt on this conclusion by testifying to specific problems affecting the mobile home. [*See* ECF No. 43 at 2, 8-16.] But the Debtor failed to provide evidence regarding the cost of necessary repairs, making it difficult to assess the severity of the issues. In addition, Banks considered several of the problems identified by the Debtor in his valuation of the mobile home. Banks allotted $150 each to (1) "Re-caulk back door & repair molding," and (2) "Replace fan (blown bulbs)." [ECF No. 52-2 at 8.] Further, the

5

appraisal from Banks considered the age of the carpet, thus addressing the Debtor's claim that the carpet is "worn down." [ECF No. 52-2 at 9.]

The Debtor's minimal description of problems with his home also casts doubt on his experts' valuations. The Debtor acknowledged that he purchased the mobile home four years before at a cost of $58,029, as shown on the loan documents attached to Vanderbilt's proof of claim. [POC 1-1 ($5,830 down payment and $52,199 financed).] The valuations provided by his experts show a decrease in value exceeding 50% of the purchase price in this short period. The problems cited by the Debtor do not support such a significant reduction, which reduces the credibility of the Debtor's experts and minimizes the weight given to their opinions on value.

Based on this, the assessment of Banks that the mobile home is in good condition is credible.

### III.  Conclusion.

For the foregoing reasons, and having considered all evidence, the record, and arguments of counsel, and being otherwise sufficiently advised, IT IS ORDERED:

1. The value of the Debtor's 2012 Giles mobile home (VIN# SGI011736TN) is $40,100.00;

2. The Debtor shall have 14 days to amend his chapter 13 plan in conformity with this ruling and his agreement regarding the interest rate; and

3. If the Debtor fails to amend his plan in the time allowed, this case shall be dismissed.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Friday, June 24, 2016
(grs)